**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **WYNONA CALLIER and BRANDON CALLIER** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **LIFT LENDING, LLC, CLEARONE ADVANTAGE LLC, GREENBERG CONSUMER LAW, LLC, TOMAS MICHAEL GORDON, AMERICAN LEGAL CLUB, LLC, DAVID R ALPERSTEIN, LIGHTPOINT LAW GROUP, LLC, and STEPHANIE RITIGSTEIN** <br><br> **Defendants.** | § § § § § § § § § § § § § § § § § | 6:26-cv-360 |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff WYNONA CALLIER ("Ms. Callier") is a natural person, a resident of Smith County, Texas, and was present in Smith County, Texas at all times relevant to this Complaint.

2. Plaintiff BRANDON CALLIER ("Mr. Callier") is a natural person, a resident of El Paso County, Texas, and was present in Smith County, Texas at all times relevant to this Complaint.

3. Defendant LIFT LENDING ("Lift Lending") is a limited liability company organized and existing under the laws of Texas and can be served via its registered agent Northwest Registered Agent, LLC, 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

4. Defendant CLEARONE ADVANTAGE, LLC ("Clear One") is a limited liability company organized and existing under the laws of Delaware and can be served via its registered agent, Business Filings Incorporated, 701 Brazos Street, Suite 720, Austin, Texas 78701.

5. Defendant GREENBERG CONSUMER LAW, LLC ("Greenberg") is a limited liability company organized and existing under the laws of New Jersey and can be served via its registered agent David R. Alperstein, 23 Country Walk, Cherry Hill, New Jersey 08003.

6. Defendant DAVID R ALPERSTEIN ("Alperstein") is a natural person, resident of New Jersey, attorney and managing member of Defendant Greenberg, personally participated in the actions alleged herein, and can be served at 23 Country Walk, Cherry Hill, New Jersey 08003

7. Defendant TOMAS MICHAEL GORDON ("Gordon") is a natural person, resident of Delaware, chief executive officer (CEO) of Defendant ClearOne, personally participated in the actions alleged herein, and can be served at 906 Westover Road, Wilmington, Delaware 19807.

8. Defendant AMERICAN LEGAL CLUB, LLC ("ALC") is a limited liability company organized and existing under the laws of Delaware and can be served via its registered agent, The First State Registered Agent Company, 1925 Lovering Ave, Wilmington, Delaware 19806.

9. Defendant LIGHT POINT LAW GROUP, LLC ("Light Point") is a limited liability company organized and existing under the laws of New Jersey and can be served at its registered agent, Northwest Registered Agent, LLC, 971 US Highway 202N, Ste N, Branchburg, New Jersey 08876.

10. Defendant STEPHANIE RITIGSTEIN ("Ritigstein") is a natural person, resident of New Jersey, attorney for Light Point, personally participated in the actions alleged herein, and can be served at 1760 Rolling Lane, Cherry Hill, New Jersey 08003.

11. Greenberg, Alperstein, ALC, Light Point, and Ritigstein are collectively hereinafter referred to as "Attorney Defendants."

12. Lift Lending, ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein are collectively hereinafter referred to as "Defendants."

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

14. The Court has pendant jurisdiction over Texas State claims under 28 U.S.C § 1367.

15. This Court has general jurisdiction over Defendant Lift Lending because it is a Texas limited liability company.

16. The Court has specific personal jurisdiction over Defendants ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein because they purposefully availed themselves of this State and forum when it intentionally spoofed Ms. Callier's 903-area code phone number to give the impression that they were located in this state and forum.

a. ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein target Texas when marketing debt relief legal services and regularly conduct business in this District.

b. ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein sent one (1) solicitation call to Plaintiff in this District that spoofed a Texas 903 Area Code, to generate sales for Defendants.

c. The purposeful spoofed phone call to Texas injured Plaintiffs in Texas, creating a causal link between ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support the specific personal jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

d. ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein knew that they could be summoned into a Texas Court by virtue of soliciting Texas residents and performing legal services in Texas.

e. ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein knew that by entering into a contractual agreement with Lift Lending, a Texas limited liability company, that they could be summoned into court in Texas.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1-2) because a substantial part of the events giving rise to the claims occurred in this District and because the Plaintiff Ms. Callier resides in this District.

18. This Court has venue over Defendants because Plaintiff brings claims under Chapter 301 of the Texas Business and Commerce Code.

**TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

19. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

20. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

21. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

22. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

23. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

24. The FCC recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

25. The FCC requires "prior express consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

26. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

28. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

29. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## TEXAS BUSINESS AND COMMERCE CODE CHAPTER 301

30. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

31. A consumer injured by a violation of this chapter may bring an action for recovery of damages. TBCC § 301.104.

32. A consumer injured by a violation of this chapter may bring an action for recovery of damages. The damages awarded may not be less than the amount the consumer paid the person

who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs.

33. Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302**

34. A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. Tex. Bus. Com. Code § 302.101.

35. A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. Com. Code § 302.252(a).

36. "Telephone call" has the meaning assigned by Section 304.002. Tex. Bus. Com. Code § 302.001(6-a).

37. "'Telephone solicitation' means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Tex. Bus. & Com. Code § 302.001(7).

38. "Telephone solicitation" "includes a telephone call a purchaser make in response to a solicitation sent by mail or made by any other means." *Id.*

39. An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

40. "A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." Tex. Bus. & Com. Code § 302.002.

41. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

42. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

43. A seller may not make a telephone solicitation from a location in this state or to a purchaser located in in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. Tex. Bus. & Com. Code § 302.101(a).

44. When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser, and if different, the complete street address of the seller's principal location. Tex. Bus. & Com. Code § 302.202(1).

45. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

46. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

47. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

48. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## TEXAS GOVERNMENT CODE § 82.0651 PROHIBITED BARRATRY AND CIVIL LIABILITY

49. Texas law strictly regulates the solicitation of legal services and prohibits attorneys and those acting for their benefit from obtaining legal employment through improper solicitation practices, commonly referred to as barratry.

50. Barratry includes the solicitation of professional employment by an attorney, or by a person acting on an attorney's behalf, through unsolicited telephone contact or through the use **of** paid intermediaries, runners, or marketing companies to obtain clients. Tex. Gov't Code § 82.0651; Tex. Penal Code § 38.12.

51. Texas Government Code § 82.0651 creates a civil cause of action against any person who commits barratry as defined by Texas Penal Code § 38.12(a) or (b) or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

52. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct prohibits a lawyer from seeking professional employment through unsolicited in-person or live telephone contact, and further prohibits a lawyer from paying, giving, or offering anything of value to a non-lawyer to solicit employment on the lawyer's behalf.

53. Texas Penal Code § 38.12 likewise prohibits a person from soliciting professional employment for a lawyer with the intent to obtain an economic benefit, including where such solicitation is conducted by a third party or intermediary acting for the lawyer's benefit.

54. Barratry may occur even where the attorney does not personally place the solicitation call, including where non-lawyer intermediaries are used to solicit prospective clients and funnel them into legal representation for the attorney's financial benefit.

55. Texas barratry law regulates the conduct of those engaging in or benefiting from improper solicitation, regardless of the state of residence of the solicited consumer, where the solicitation is directed, managed, or carried out through Texas-based entities or infrastructure.

56. A person who is solicited for legal services by conduct violating Texas Penal Code § 38.12 or Rule 7.03 may bring a civil action under Texas Government Code § 82.0651 against any person who committed the barratry or knowingly benefited from it, whether or not the solicitation resulted in an executed legal-services contract.

57. Under Texas Government Code § 82.0651(c), a person who prevails on a barratry claim is entitled to recover, from each defendant who committed or knowingly benefited from the barratry, a civil penalty of $50,000, in addition to actual damages, reasonable and necessary attorney's fees, and injunctive relief, as authorized by law

**FACTUAL ALLEGATIONS**

58. Plaintiffs did not have a preexisting business relationship with Defendants.

59. Plaintiffs did not request Defendants' services.

60. Defendants offer debt relief services and legal services.

61. Every call in this Complaint is a solicitation of legal services for debt relief.

62. On June 9, 2026, Ms. Callier received a prerecorded phone call to her personal cell phone

ending in 6360.

63. The prerecorded message stated:

> "These funds are meant to clear your credit cards, pay off other loans, or just give you some breathing room with extra cash. We can deposit the money within 24 hours, but it's urgent that we speak today. Please press 5 to connect with a specialist now or press 9 to be added to the do not contact list. Again, press 5 to connect or press 9 to be removed."

64. On June 19, 2026, Mr. Callier called phone number 888-990-1946, the phone number on the caller identification from the June 9, 2026, phone call.

65. Mr. Callier was connected to a representative who identified himself as Samuel Wohl ("Wohl"), an employee of Lift Lending.

66. The representative asked Mr. Callier questions about his income, debts, job status, etc., before soliciting Mr. Callier for debt relief and legal services.

67. Wohl then sent Mr. Callier an email that contained a Docusign link to retrieve and sign the paper.

68. Mr. Callier downloaded the Docusign file but did not sign the documents.

69. Mr. Callier was solicited for legal services/representation during the phone call. Mr. Callier did not request or seek legal services.

70. The phone call Mr. Callier placed to Defendants was not placed in response to an advertisement for legal services, and Mr. Callier had no idea or inclination that he would be solicited for legal services prior to placing the phone call.

71. The Docusign file contained a series of agreements to enroll Mr. Callier in various services offered by Defendants.

72. Defendants did not properly identify themselves at the beginning of phone call and it was more than thirty minutes into the phone call before Mr. Callier was informed of the names of the

companies providing services.

73. Page five (5) of the Docusign states" This Debt Resolution Agreement…is made by and between ClearOne Advantage, LLC, a Delaware limited liability company and Brandon Callier."

74. Page eleven (11) of the agreement contains the signature block where Defendant Tomas Gordon, signs on behalf of Defendant ClearOne as the Chief Executive Officer (CEO).

75. ClearOne's debt relief services were sold during the phone call.

76. Page twenty-eight (28) of the contract contains a "Limited Representation Agreement" from Greenberg Consumer Law, and states, "This Limited Representation Agreement, entered into between Greenberg Consumer Law, LLC ('Counsel') and ('Client') sets for the terms of our engagement with providing you legal services."

77. The Limited Representation Agreement further states, "I, Brandon Callier, have entered into a written agreement with Counsel, I under that the attorney will represent me for the limited purpose of acting as my attorney for the negotiation of my debt settlement…acting as my attorney for the purpose of ensuring that ClearOne has complied with all federal regulations."

78. Page twenty-nine (29) of the Limited Representation Agreement states, "David R. Alperstein and Greenberg Consumer Law, LLC will provide and be responsible for the legal services you request."

79. The legal services of Greenberg and Alperstein were solicited and sold during the June 19, 2026, phone call.

80. Page thirty-five (35) of the Docusign contains a "Member Service Agreement" from Defendant American Legal Club, and states,

> "The Member and all Covered Persons will received the Services as outlined in this Agreement. The Services are provided in return for your payment of a monthly membership fee in compliance with the terms and conditions of this Agreement. The Services will be provided by lawyers appointed by ALC, who are

licensed lawyers."

81. Defendant American Legal Club's legal membership plan was sold during the June 19, 2026, phone call.

82. Page forty-four (44) contains the signature block where Patrick Williams signed on behalf of Defendant American Legal Club.

83. Page forty-seven (47) of the Docusign contains an "Agreement to Provide Legal Representation" and states, "LightPoint agrees to provide the Client with legal defense services in debt collection lawsuits."

84. Page fifty (50) of the Docusign contains the signature of Stephanie Ritigstein signing on behalf of Defendant LightPoint Law.

85. Defendant LightPoint Law's legal services were solicited on the June 19, 2026, phone call.

86. Defendants did not disclose the location from which the phone calls had been made during the telephone solicitation.

87. Defendants did not properly state the name of the company making the phone calls and on whose behalf the phone calls had been made.

88. Plaintiffs did not know the name of the companies responsible for the phone calls until Defendants emailed Plaintiff the Docusign more than 45 minutes into the solicitation.

89. Defendants did not have permission to send Ms. Callier prerecorded voice messages.

90. No emergency preceded or necessitated the phone calls at issue in this instant action.

91. Defendants made the phone call alleged herein for the purpose of soliciting legal services for financial profit.

92. On July 22, 2026, Plaintiff searched the Texas Secretary of State website at

https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and found no telephone solicitation registration for Defendants.

93. Defendants have never been registered to telephone solicit in Texas.

94. Each of the phone calls alleged herein was made without a valid Texas telephone registration certificate.

95. Defendant Clear One and Gordon placed the phone calls to market debt relief services on their own behalf.

96. Defendants Greenberg, Alperstein, ALC, Light Point, and Ritigstein placed the phone calls to market their legal services of on their own behalf and for financial gain.

97. Defendant Lift Lending placed the phone calls to market the legal services of Greenberg, Alperstein, ALC, Light Point, and Ritigstein for financial gain.

98. Defendant Lift Lending knew that Defendants Greenberg, ALC, and Light Point were not registered to telephone solicit in Texas by having knowledge that Greenberg, ALC, and Light Point are barred from cold call soliciting by the American Bar Association and Texas Bar Association.

**LIABILITY UNDER TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302**

99. Texas Business and Commerce Code Chapter 302 does not require the seller to have an agency relationship with the salesperson in order to impose liability upon the seller for calls made by the salesperson.

100. The clear language of the statute states, "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation". Tex. Bus. Com. Code § 302.302.

101. "Telephone call" has the meaning assigned by Section 304.002(10)(A-C).

102. "Telephone solicitation" means a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. Com. Code § 302.001(7).

103. "**Salesperson**" means a person who is **employed**[1] or **authorized**[2] by a seller to make a telephone solicitation. Tex. Bus. Com. Code § 302.001(4) (bold emphasis added).

104. "Seller" means a person who makes a telephone solicitation on the person's own behalf. Tex. Bus. Com. Code § 302.001(5).

105. To the extent that Defendants ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein may argue that a third party made the phone calls, the question concerning liability under Texas Business and Commerce Code § 302.101 is not whether ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein had control over, or an agency relationship with, the third party, but rather, whether the third party was authorized to solicit ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein's legal services.

106. The clear language of the statute places liability on the seller for phone calls made by salespersons who are employed or authorized by the seller to make telephone solicitations.

107. It would be implausible for Defendants ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein to argue that Lift Lending was not authorized to sell ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein's legal services.

---

[1] "**Employ**, vb. **1**. To make use of. **2**. To hire. **3**. To use as an agent or substitute in transacting business. **4**. To commission and entrust with the performance of certain acts or functions…." Garner, **Black's Law Dictionary**, p. 602 (Ninth Ed.)

[2] "**Authorize,** vb. **1**. To give legal authority; to empower <he authorized the employee to act for him>. **2**. To formally approve; to sanction <the city authorized the construction project>. – authorization, n." Garner, **Black's Law Dictionary**. p. 153 (Ninth Ed.)

108. Lift Lending called Ms. Callier's phone and solicited Mr. Callier for legal services offered by ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein, and emailed Mr. Callier their retainers to enroll Mr. Callier in their respective legal services.

109. Lift Lending was clearly authorized to solicit as evidenced by the fact that Lift Lending had access to ClearOne, Greenberg, Alperstein, Gordon, ALC, Light Point, and Ritigstein retainer agreements and sent the retainer agreements to Mr. Callier.

**VICARIOUS LIABILITY OF DEFENDANTS GREENBERG, ALC, LIGHTPOINT LAW, ALPERSTIEN, RITIGSTEIN (ATTORNEY DEFENDANTS)**

110. Attorney Defendants are a group of attorneys who are barred by Texas State and American Bar Association ethics rules from soliciting consumers with whom they have no prior relationship.

111. The state of Texas is so serious about stopping attorneys from cold-calling solicitation that, on September 1, 2026, it raised the penalty from $10,000 per barratry occurrence to $50,000.

112. Attorney Defendants has hired and authorized numerous marketing companies to market its legal services as an end-around of state and national ethics rules that prevent cold-call solicitation and barratry.

113. Attorney Defendants entered into a contract with Lift Lending to market its legal services, fully aware that marketing would violate federal and state laws. In fact, the very purpose Attorney Defendants hired Lift Lending was to break marketing laws that Attorney Defendants could not break on their own.

114. Attorney Defendants ratified the phone calls beforehand when they hired Lift Lending and other marketing companies with the express purpose of evading state and national ethics

rules prohibiting unauthorized solicitation.

115. Attorney Defendants have accepted the benefits of Lift Lending's marketing campaign with full knowledge that the benefits came from illegal telephone calls.

116. Attorney Defendants instructed Lift Lending on what states to market their legal services.

117. Attorney Defendants wrote and approved the telemarketing script.

118. Attorney Defendants provided Lift Lending with the qualifying questions and required Lift Lending to ask those qualifying questions.

119. Attorney Defendants exercised control over the Lift Lending telemarketer by providing state of residence requirements and mental capacity requirements, and other restrictions as the qualifying attributes for the legal representation.

120. Attorney Defendants supplied Lift Lending with the minimum standards to qualify consumers as a potential client. These minimum standards included but were not limited to state of residence, total debts, total income, debt to income ratio, not having previously obtained counsel, and being a citizen of an approved state.

121. Attorney Defendants exercised interim control over Lift Lending by maintaining when, and under what circumstances, they would accept client referrals from Lift Lending.

122. Lift Lending had both actual and apparent authority to act on behalf of Attorney Defendants.

123. "A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts or when the principal ratifies them." *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997).

124. Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of the former. *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

**VICARIOUS LIABLITY OF DEFENDANT CLEARONE**

125. ClearOne instructed Lift Lending on what states to call.

126. ClearOne participated in, and approved, the drafting and recording of the prerecorded message at issue in this Complaint.

127. ClearOne supplied Lift Lending with minimum standards to qualify consumers as a potential client. These minimum standards included but were not limited to state of residence, total debts, total income, debt to income ratio, and being a citizen of an approved state.

128. ClearOne instructed Lift Lending to use false, misleading, and incorrect names during the phone calls in order to suppress the knowledge of the phone call origins

129. ClearOne controlled the timing and frequency of the predictively dialed calls, in order to ensure that it had operators sufficient to handle the leads that came into the system.

130. ClearOnet maintained interim control over when, and under what circumstances, it would accept transfers and leads from Lift Lending.

**PERSONAL LIABILITY OF GORDON, ALPERSTEIN, AND RITIGSTEIN**

131. If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985).

132. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d

1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

133. Alperstein and Ritigstein personally participated in the barratry actions alleged herein as it was their legal services being sold.

134. Alperstein and Ritigstein are the listed attorneys on the contracts and stated as the attorneys whose legal services were being sold.

135. Alperstein and Ritigstein personally hired Lift Lending, supplied Lift Lending with the retainer agreements of Greenberg and Light Point, and directed Lift Lending on which states to call during the marketing campaign.

136. At all times material to the Complaint Gordon has formulated, directed, controlled, and had the authority to control, and participated in the acts and practices set forth in this Complaint.

137. Defendant Gordon is the sole officer and decision maker of Defendant ClearOne and directed his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls to solicit debt reduction services.

138. Defendant ClearOne has been the subject of multiple accusations accusing it of violating the TCPA and making unregistered telephone solicitation calls in violation of Texas Business and Commerce Code § 302.101.

139. Gordon has been on notice for more than a year and has taken no steps to curb the violating behavior. Gordon has allowed the law-breaking practices to continue in search of ill-gotten riches.

140. Gordon has turned a blind eye to the violations because it benefits him financially.

141. Gordon approved of the phone calls scripts and directed that prerecorded phone calls be sent to consumers on the National Do Not Call list.

142. Gordon is not an innocent bystander, but the mastermind that schemed, planned, directed, initiated, and controlled fraudulent behavior of ClearOne.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES OF PLAINTIFFS

143. Plaintiffs suffered severe stress and aggravation as a result of the phone call.

144. Plaintiff Ms. Callier had her phone trespassed upon him.

145. Plaintiffs suffered from confusion and aggravation as a result of Defendants not properly identifying themselves.

## CAUSES OF ACTION

### COUNT ONE

**Non-Emergency Prerecorded Call to Cellular Telephones, 47 U.S.C. 227(b)(1)(A)(iii)**
**(Against All Defendants)**

146. Plaintiffs reallege and incorporate by reference every allegation set forth in paragraphs 1-145.

147. The foregoing acts and omissions of Defendants and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing ATDS texts to Plaintiff Ms. Callier's cellular telephone numbers without her prior express consent.

148. Plaintiff Ms. Callier was statutorily damaged at least one (1) times under 47 U.S.C § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

149. Plaintiff Ms. Callier was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff Ms. Callier requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**COUNT TWO**
**Violations of Texas Business Commerce Code 302.101**
**(Failure to Obtain a Telephone Solicitation Registration Certificate)**
**(Against Defendants ClearOne, Greenberg Law, Gordon, Alperstein, Light Point, and Ritigstein)**

150. Plaintiffs reallege and incorporate by reference every allegation set forth in paragraphs 1-149.

151. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making two (2) non-registered solicitation calls to Plaintiff Ms. Callier's cellular telephone number without her prior express written consent.

152. Plaintiff Ms. Callier is entitled to an award of up to $5,000 in damages for each of two (2) such violation per Defendant. Texas Business and Commerce Code 302.302(a).

153. Plaintiff Ms. Callier is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

**COUNT THREE**
**Violations of Texas Business Commerce Code 302.202(1)**
**(Failure to Disclose Location)**
**(Against All Defendants)**

154. Plaintiffs reallege and incorporates by reference every allegation set forth in paragraphs 1-153.

155. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.202, by making one (1) non-registered solicitation calls to Plaintiff Ms. Callier's cellular telephone number without disclosing the address from where the solicitation phone calls had been placed.

156. Plaintiff Ms. Callier is entitled to an award of up to $5,000 in damages for each of one (1) such violations. Texas Business and Commerce Code 302.302(a).

## COUNT FOUR
**Violations of Texas Business Commerce Code 302.252**
**(Acting as a Salesperson for Unregistered Seller)**
**(Against Defendant Lift Lending)**

157. Plaintiffs reallege and incorporate by reference every allegation set forth in paragraphs 1-156.

158. The foregoing acts and omissions of Defendant Lift Lending and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.252, by making two (2) non-registered solicitation calls to Plaintiff Ms. Callier's cellular telephone number with full knowledge the phone call was placed on behalf of Defendants ClearOne, Greenberg, Gordon, ALC, Alperstein, Light Point, and Ritigstein, and that Defendants ClearOne, Greenberg, Gordon, ALC, Alperstein, Light Point, and Ritigstein, were not registered to telephone solicit in Texas.

159. Plaintiff Ms. Callier is entitled to an award of up to $5,000 in damages for each of two (2) such violations. Texas Business and Commerce Code 302.302(a).

160. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

**COUNT FIVE**
**Violations of Texas Business and Commerce Code § 301.051(b)(1)(A-C)**
**Failure to Identify**
**(Against All Defendants)**

161. Plaintiffs reallege and incorporate by reference every allegation set forth in paragraphs 1-160.

162. Defendants did not immediately after making contact with the consumer to whom the call is made, identify himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

163. Plaintiff was damaged at least one (1) times by Defendants.

164. A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

165. Plaintiffs seek damages in the amount of 1,000 per violating phone call.

**COUNT SIX**
**Violation of 82.0651 Civil Liability for Prohibited Barratry**
**(Against Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein)**

166. Plaintiffs reallege and incorporate by reference every allegation set forth in paragraphs 1-165.

167. Barratry is the solicitation of employment to prosecute or defend a claim with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

168. Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments.

169. Rule 7.03 provides, in relevant part, as follows

a. A lawyer shall not by in-person contact, or by regulated telephone or other electronic contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain…

b. As used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. *Id.* R. 7.03(a), (as used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. *Id.* R. 7.03(a), (f).

170. A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

171. Plaintiff Mr. Callier did not initiate communication with Defendants Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein for legal representation.

172. Plaintiff Mr. Callier was targeted by Defendants Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein despite not having a preexisting relationship with Defendants.

173. Defendant Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein's conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

174. Plaintiff Mr. Callier was solicited on behalf of Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein so that Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein would benefit financially.

175. Lift Lending, Greenberg, Alperstein, ALC, Light Point, and Ritigstein knew or should have known that its non-authorized tele-solicitation of clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

176. Defendants Greenberg, Alperstein, ALC, Light Point, and Ritigstein violated Texas Penal Code § 38.12 when it solicited employment for themselves by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

177. Defendant Lift Lending violated Texas Penal Code § 38.12 when it solicited employment on behalf of Greenberg, Alperstein, ALC, Light Point, and Ritigstein for financial benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment.

178. A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other

persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

179. A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Wynona Callier and Brandon Callier pray for judgment against the Defendants jointly and severally as follows:

A. A declaratory judgment that Defendants violated the Telephone Consumer Protection Act;

B. A declaratory judgment that Defendants violated the Texas Business and Commerce Code;

C. A declaratory judgment that Defendants violated the Texas Government Code;

D. An award of $1,500 per phone call against Defendants in statutory damages arising from one (1) violation of 47 U.S.C. 227(b).

E. An award of $5,000 each against Defendants ClearOne, Greenberg, Gordon, ALC, Alperstein, Light Point, and Ritigstein, per phone call in statutory damages arising from violations of the Texas Business and Commerce Code 302.101 for two (2) calls;

F. An award of $5,000 against Defendant Lift Lending per phone call in statutory damages arising from violations of the Texas Business and Commerce Code 302.252(a) for two (2) calls;

G. An award of $5,000 against Defendants ClearOne, Greenberg, Gordon, ALC, Alperstein, Light Point, and Ritigstein, per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 302.202 for one (1) call.

H. An award of $1,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 301.051(b)(2) for one (1) phone call.

I. An award of $50,000 against Defendants Greenberg, Alperstein, ALC, Light Point, and Ritigstein in statutory damages arising from violations of Prohibited Barratry Texas Government Code 82.0651.

J. An award of $50,000 against Defendant Lift Lending in statutory damages arising from violations of Prohibited Barratry Texas Government Code 82.0651; and

K. Such further relief as the Court deems necessary, just, and proper

July 27, 2026,

Respectfully submitted,

Wynona Callier
Plaintiff, Pro Se
3650 N. Broadway
#1603
Tyler, TX 75702
903-830-6360
Wynonacallier1955@gmail.com

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive
#174
El Paso, TX 79928
915-383-4604
Callier74@gmail.com